UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                               Case No. 10-78286

DARRYL W. EASON,                        Chapter 7

                 Debtor.                       Judge Thomas J. Tucker
_____/

LARRY HARDIN,

                 Plaintiff,

v.                                                    Adv. Pro. No. 11-6139

DARRYL W. EASON,

                 Defendant.
_____/

**TRIAL OPINION**

**I. Introduction**

In this adversary proceeding, Plaintiff Larry Hardin seeks a judgment against Defendant Darryl Eason for $40,000, plus attorney fees and costs, and seeks a determination that this debt is nondischargeable in Eason's Chapter 7 bankruptcy case, under 11 U.S.C. § 523(a)(2)(A). The Court held a bench trial on May 22, 2012, then took this adversary proceeding under advisement. The Court has considered all of the arguments and evidence presented by the parties at trial. This opinion states the Court's findings of fact and conclusions of law.

For the reasons stated in this opinion, the Court finds for Defendant Eason, and will enter a judgment in Eason's favor.

**II. Background**

Defendant Darryl Eason filed a voluntary bankruptcy petition under Chapter 11, on

December 23, 2010. The case was converted to Chapter 7 on June 22, 2011. Eason was granted a discharge in the Chapter 7 case, on September 27, 2011. Plaintiff Larry Hardin filed this adversary proceeding on July 26, 2011.

The dispute in this adversary proceeding centers around a written agreement, entitled "Investor Agreement with Synergy Acquisitions, LLC." (sometimes referred to below as the "Investor Agreement").[1] The agreement was entered into, and dated August 15, 2008. The parties to the agreement are Plaintiff Hardin and Synergy Acquisitions, LLC ("Synergy"). Defendant Eason signed the Investor Agreement on behalf of Synergy. According to Eason's testimony at trial, the members of Synergy are Eason and his wife, each of whom are 50% members.

Hardin's complaint alleged that Eason made three fraudulent misrepresentations in the Investor Agreement. The complaint alleged the following:

> 5. On or about August 15, 2008, Plaintiff entered into a contract with Synergy Acquisitions, LLC for the investment of real property located at 13635 Indiana, Detroit, Michigan (Property). A copy of the contract is attached as Exhibit A.
>
> 6. Plaintiff paid $40,000 to Defendant in exchange for a 16% interest in the real property.
>
> 7. Pursuant to the terms of the contract, Defendant was required to return the $40,000 to Plaintiff in the event that the real property was not successfully acquired by Defendant.
>
> 8. Defendant failed to acquire the Property and failed to refund the $40,000 to Plaintiff.
> . . .
>
> 11. **With the intent to deceive and defraud Plaintiff, Defendant**

---

[1] Pl.'s Ex. 1.

2

> **represented that he would use Plaintiff's $40,000 investment towards the purchase of Property.**
>
> 12. **With the intent to deceive and defraud Plaintiff, Defendant represented that he would refund the $40,000 to Plaintiff if he was unable to acquire the Property.**
>
> 13. **With the intent to deceive and defraud Plaintiff, Defendant represented that he would give Plaintiff a security interest in real property located at 28656 Emerson, Inkster, MI for return of the principal.**[2]

Eason filed a motion for summary judgment. The Court granted that motion in part, and denied it in part, in two orders, filed on March 7, 2012 and April 4, 2012.[3] The Court granted summary judgment for Eason "on [Hardin's] fraudulent representation claim under 11 U.S.C. § 523(a)(2)(A), with respect to the alleged misrepresentation by Mr. Eason that he would refund Mr. Hardin's $40,000 investment, if the litigation to obtain the real property located at 13635 Indiana, Detroit, Michigan was unsuccessful."[4] For the reasons explained in more detail in the Court's bench opinions of March 7, 2012 and April 4, 2012,[5] the Court ruled that this fraud theory was foreclosed because: (1) the Investor Agreement, clearly and unambiguously, did *not* obligate Synergy or Eason to refund any of Hardin's $40,000 investment if the Indiana property was not acquired; and (2) the Investor Agreement's integration clause, combined with Michigan's parol evidence rule, precluded, as a matter of law, (a) any claim that Eason or Synergy made such a refund promise or representation to Hardin; and (b) any claim that Hardin

---

[2] Compl. (Docket # 1)(emphasis added).

[3] Docket ## 36, 44.

[4] April 4, 2012 Order (Docket # 44) at 1.

[5] The Court explained its summary judgment rulings in two bench opinions, given on March 7, 2012 and April 4, 2012. Transcripts of these bench opinions are filed at Docket ## 39 and 46.

3

was fraudulently induced to enter the Investor Agreement by any such promise or representation.

The Court denied Eason's summary judgment motion "with respect to the alleged misrepresentation by Mr. Eason that Mr. Eason 'would give [Mr. Hardin] a security interest in real property located at 28656 Emerson, Inkster, MI for return of the principal' (*see* Compl. (Docket # 1) at 2 ¶ 13)."[6] As to this lien to be given in the property at 28656 Emerson in Inkster (the "Inkster property"), the Court interpreted the Investor Agreement, in part, as follows:

> Under the terms of the [I]nvestor [A]greement, the written [I]nvestor [A]greement, clearly and unambiguously there is no right under that agreement for Mr. Hardin to obtain a refund of any part of his $40,000 investment **other than through his realization of the collateral that was in the form of a lien to be obtained in the property on Emerson in Inkster, Michigan**.[7]

The parties have stipulated to the following facts, as stated in the Amended Final Pretrial Order, filed May 1, 2012:

> 1. Plaintiff issued a check to Synergy Acquisitions, LLC in the amount of $40,000 for investing in property located at 13635 Indiana, Detroit, Michigan.
>
> 2. Defendant is the sole owner and operator of Synergy Acquisitions, LLC.[8]
>
> 3. Neither Defendant nor Synergy Acquisitions, LLC used Plaintiff's investment in the amount of $40,000 towards the purchase of real property located at 13635 Indiana, Detroit, Michigan.

---

[6] March 7, 2012 Order (Docket # 36) at 1.

[7] March 7, 2012 Bench Op. Tr. (Docket # 39) at 12-13 (emphasis added).

[8] This stipulation, to the extent it states that Eason is the sole owner of Synergy, is inconsistent with Eason's trial testimony, in which Eason testified that he and his wife are each 50% owners of Synergy. But this inconsistency is not material to the Court's decision in this case.

4

4. The agreement signed by Plaintiff and Synergy Acquisitions, LLC said that Plaintiff was purchasing a 16% interest in the profit derived from Synergy Acquisitions, LLC's claim, sale or lease of the Indiana property.

5. Plaintiff does not have a lien on property located at 28656 Emerson, Inkster, Michigan.[9]

In the Amended Final Pretrial Order, the parties frame the issues remaining for trial as follows:

*Plaintiff* says the following:

> Defendant owes Plaintiff $40,000 which should be declared non-dischargeable pursuant to 11 U.S.C. [§] 523(a)(2)(A). Plaintiff Larry Hardin gave $40,000 to the defendant on August 15, 2008 in order to invest in real property located at 13635 Indiana, Detroit, Michigan ("Indiana"). Defendant neither used the money to invest in the real property nor refunded it to Larry Hardin.
>
> The defendant has a business called Synergy Acquisitions, LLC. On the written agreement between the parties, Defendant signed stating that he was acting on behalf of the business. However, the defendant acted fraudulently as an individual.
>
> **With the intent to deceive and defraud Plaintiff, the defendant represented that properties located at 28656 Emerson, Inkster, Michigan would be provided as additional security for return of the principal. Defendant did not provide any type of security interest to Mr. Hardin as required by the terms of the agreement.** Defendant, as an individual, knew that his claims and promises were false when he made them. **Defendant also knew that he was not going to give Plaintiff a lien on the properties located at 28656 Emerson, Inkster, Michigan.** Unfortunately, Plaintiff relied on the defendant's false claims in deciding to give money to the defendant. If the defendant had given a lien in the Emerson properties as required by the contract, then Plaintiff would have been able to foreclose on the properties in order to recover some of his invested money. As a result of Defendant's

---

[9] Am. Final Pretrial Order (Docket # 52) at 3.

5

actions, Plaintiff has suffered damages in the amount of $40,000.[10]

*Defendant* says the following:

> Defendant denies that he deceived and defrauded Plaintiff. Defendant claims that Synergy Acquisitions, LLC. entered into an agreement with Plaintiff wherein Plaintiff purchased an interest in real property that it had acquired at a tax foreclosure sale but was currently in litigation. The agreement made it perfectly clear that if Synergy lost the litigation, it would lose all rights and interest in the property. Synergy Acquisitions, LLC, presented Plaintiff with legal pleadings to verify that it was involved in litigation. Plaintiff acknowledged in writing that he was aware of the litigation. **The agreement also provided that Plaintiff could place a lien on other property to protect his investment, but Plaintiff chose not to place a lien on the property.** Synergy Acquisitions, LLC lost the litigation and lost all rights and interest in the property.[11]

## III. Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.). This is a core proceeding under 11 U.S.C. § 157(b)(2)(I).[12]

## IV. Discussion

### A. The elements of Plaintiffs' nondischargeability claim

Hardin claims that Eason owes him a debt of $40,000.00, and that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) excepts from discharge:

> any debt -

---

[10] *Id.* at 1-2 (emphasis added).

[11] *Id.* at 2-3 (emphasis added).

[12] The parties have agreed that this Court has subject matter jurisdiction, and that this is a core proceeding. *See* Am. Final Pretrial Order at 1.

6

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Exceptions to discharge, including the exceptions under § 523(a)(2), "are to be strictly construed against the creditor." *Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998) (citing *Manufacturer's Hanover Trust v. Ward* (*In re Ward*), 857 F.2d 1082, 1083 (6th Cir. 1988)). The creditor must prove each of the elements under § 523(a)(2)(A) by a preponderance of the evidence. *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

The Sixth Circuit has described the elements of nondischargeability under § 523(a)(2)(A) in this way:

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert,* 141 F.3d at 280-81 (citation omitted).

### B. Whether Plaintiff has met his burden of proof

Under the August 15, 2008 Investor Agreement, Hardin invested $40,000 in exchange for a 16% interest in any return derived from Synergy's claim, then in litigation, to ownership of the Indiana property. Both Hardin and Eason believed that if the Synergy litigation over the Indiana property was successful, Hardin's 16% interest in the ultimate return derived from the Indiana

7

property would be worth substantially more than the $40,000 Hardin invested. Eason believed, and Eason convinced Hardin, that there was a good chance of success in the litigation over the Indiana property. That belief later proved to be unfounded, however, when Synergy lost the litigation and was unable to acquire ownership of the Indiana property. But Hardin does not claim that Eason made any fraudulent misrepresentation to him about the value of the Indiana property and the returns it could bring if the litigation were successful, or about the chances of success in the litigation.

Hardin's § 523(a)(2)(A) fraud theory that remained after this Court's summary judgment rulings, and that was tried, is based on the fact that Eason and his company, Synergy, made a promise in the Investor Agreement to give Hardin a lien on the Inkster property, to secure the return of the $40,000 principal of Hardin's investment in the Indiana property, if Synergy was unable to acquire the Indiana property. As noted earlier in this opinion, the Court interprets the Investor Agreement to unambiguously mean that Hardin had no right to obtain a refund of any part of his $40,000 investment *other than* through what Hardin could obtain by realizing on the lien Hardin was to obtain on the Inkster property.[13]

Hardin's fraud theory asserts what is sometimes called promissory fraud — essentially, that someone has promised something with no intention of keeping that promise. *See, e.g., Rembert*, 141 F.3d at 281 (the use of a credit card is a representation of an intention to repay the debt incurred; such use of a credit card while having no such intention can be a form of fraud under § 523(a)(2)(A)). Hardin's fraud theory is that when Eason caused his company, Synergy,

---

[13] *See* discussion in Part II of this opinion, quoting the March 7, 2012 Bench Opinion Transcript (Docket # 39) at 12-13 (emphasis added); *see also* the Investor Agreement (Pl.'s Ex. 1) at §§ 2.1, 1.1, 1.2.

to make the Investor Agreement with Hardin, and when Eason induced Hardin to make that Agreement, Eason had no intention of giving Hardin a lien on the Inkster property, as required by § 2.1 of the Agreement.

The Court finds and concludes that Plaintiff Hardin has not met his burden of proving this § 523(a)(2)(A) fraud theory, because he has failed to prove several necessary elements.

First, Hardin has failed to prove that when the Investor Agreement was made, Eason did not intend to give Hardin a lien on the Inkster property. Assuming that something more than just the execution of the Investor Agreement itself was needed to give Hardin a lien on the Inskter property, such as the drafting, execution and recording of a mortgage, the Investor Agreement did not specify whether the drafting and recording of such a mortgage had to be done by Hardin or by Synergy/Eason. Given that, the fact that *Eason* did not draft or record such a mortgage does not raise an inference that Eason did not intend to give a lien on the Inkster property when the Investor Agreement was made. And the fact that the Inkster property was owned by Eason personally, while the parties to the Investor Agreement were Hardin and Synergy, does not prove that Synergy could not, through Eason, obtain performance of any steps needed to grant and record a mortgage on the Inkster property.

If anything, the evidence presented at trial tends to negate any inference that Eason never intended to give Hardin a lien on the Inkster property. Eason's undisputed testimony at trial was that in January 2010, after Synergy's litigation for the Indiana property had failed, Eason met with Hardin and offered to deed to Hardin, that day, ownership of the Inkster property. Both at that time and when the Investor Agreement was executed, the Inkster property had no liens or mortgages on it; the only possible encumbrances on that property were property tax liens.

9

According to Eason, the value of the Inkster property had declined between August 2008 and January 2010. But without ever investigating the Inkster property or its value at all, Hardin declined Eason's offer to deed Hardin the Inkster property.

In addition, and also during Eason's meeting with Hardin in January 2010, Eason offered to transfer to Hardin two other specific properties that Eason then owned, at least one of which was unencumbered, and both of which were rent-producing properties. But again, Hardin declined these offers, saying that he didn't want any properties, but only wanted his money back.

These facts tend to show that Eason did *not* intend not to give Hardin a lien on the Inkster property, when the Investor Agreement was made. The Court finds that Hardin has failed to meet his burden of proving, by a preponderance of the evidence, that Eason either knew or intended, when the Investor Agreement was made, that Hardin would *not* get a lien on the Inkster property.

Hardin has failed to prove other elements of his § 523(a)(2)(A) fraud claim as well. Hardin has failed to prove that Eason ever "intended to deceive" Hardin, as required by the Sixth Circuit's list of elements in the *Rembert* case, quoted in Part IV-A of this opinion, above.

In addition, Hardin has failed to prove that he *actually* relied at all on Eason's allegedly fraudulent promise in the Investor Agreement, to give Hardin a lien on the Inkster property. Such actual reliance, of course, is part of the "justifiable reliance" element under the *Rembert* case, quoted above. The creditor must actually rely on the allegedly fraudulent representation or promise, and such actual reliance must be "justifiable." Hardin admitted in his testimony that until the week before trial, he never investigated the Inkster property or its value. The week before trial, Hardin testified, he "googled" the Inkster property, and went and looked at it. But

10

until then he did not do anything to assess what value the property might have for him, if he had a lien on the property, to recover some of his $40,000 investment. And Hardin never got any sort of appraisal of that property. And as noted above, when Eason offered to immediately transfer the Inkster property to Hardin outright, in January 2010, Hardin refused the offer, without investigating the property in any way.

The Court finds that Hardin did not *actually* rely at all on the promise of a lien on the Inskter property, in entering into the Investor Agreement and investing his $40,000. Rather, Hardin was motivated by the prospect of obtaining a significant return on his $40,000 investment from the 16% interest the Investor Agreement gave him in Synergy's interest in the Indiana property. With respect to the promised lien on the Inkster property, Hardin was indifferent. This is shown not only by the facts described above, but also by the undisputed fact that at no time after signing the Investor Agreement on August 15, 2008, did Hardin ever take any affirmative steps himself to obtain a recorded lien on that property. Nor did he ever request or demand that Eason take such steps.

For all of these reasons, the Court finds that Hardin has failed to prove his case.[14]

### C. Counts II and III of Plaintiff's complaint

Hardin's Complaint contains three counts. Count I, fraudulent misrepresentation under

---

[14] With respect to the allegation in Hardin's complaint that Eason fraudulently promised and represented that he would use Hardin's $40,000 investment "towards the purchase of" the Indiana property (*see* Compl. (Docket # 1) at ¶ 11), the Court finds the following: (1) Hardin abandoned any such theory as a fraud theory separate from his two other fraud theories ruled on in the Court's summary judgment ruling (*see, e.g.*, the Court's March 7, 2012 Bench Op. Tr. (Docket # 39) at 4-5)(describing Hardin's two fraud theories); and (2) in any event, Hardin failed to prove the necessary elements of such a fraud theory. Hardin did not prove the following elements of such a fraud theory by a preponderance of the evidence, as required by the *Rembert* case: materiality; intent not to perform by Eason; intent to deceive Hardin by Eason; and actual reliance by Hardin.

§ 523(a)(2)(A), has been discussed in this opinion. Count II, labeled "Innocent Misrepresentation" and Count III, labeled "Piercing the Corporate Veil," are counts that fail to state any separate claim against Defendant Eason of nondischargeability under any provision of 11 U.S.C. § 523(a).[15] Accordingly, Counts II and III must be dismissed for failing to state a claim of nondischargeability upon which relief can be granted.[16]

## V. Conclusion

For the reasons stated in this opinion, the Court will enter judgment for the Defendant, Darryl Eason.[17]

**Signed on June 1, 2012**           **/s/ Thomas J. Tucker**
                                    **Thomas J. Tucker**
                                    **United States Bankruptcy Judge**

Not for publication

---

[15] Hardin's counsel basically conceded this as to Count II (Innocent Misrepresentation), on the record during the March 7, 2012 oral argument on Eason's summary judgment motion.

[16] To the extent Count III (Piercing the Corporate Veil) can be viewed as incorporating Count I's fraud allegations and theories, it fails for the same reasons the Court has stated with respect to Count I.

[17] During trial, at the conclusion of Hardin's case-in-chief, Eason moved for judgment under Fed.R.Civ.P. 52(c), which applies in this adversary proceeding under Fed.R.Bankr.P. 7052. As permitted by Rule 52(c), however, the Court declined to render any judgment until the close of all of the evidence, after which the Court took the case under advisement. The Rule 52(c) motion is now moot, in light of the Court's decision as described in this opinion.